# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JON REYNOLDS, Derivatively on Behalf of Nominal Defendant DIGITALOCEAN HOLDINGS, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| YANCEY SPRUILL, WARREN ADELMAN, AMY BUTTE, CHRIS MERRITT, HILARY SCHNEIDER, PRATIMA ARORA, PUEO KEFFER, and WARREN JENSON, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIGITALOCEAN HOLDINGS, INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Jon Reynolds ("Plaintiff"), by and through his undersigned attorneys, brings this verified stockholder derivative action on behalf of nominal defendant DigitalOcean Holdings, Inc. ("DigitalOcean" or the "Company"), against certain of the Company's executive officers and its Board of Directors (the "Board") for  breaches of fiduciary duties and violations of federal law by the Individual Defendants (defined below).  Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and

belief as to all other matters, based on, *inter alia*, the investigation conducted by his counsel, including review of publicly available information regarding the Company; the allegations of an amended class action complaint filed in the securities class action captioned *Agarwal v. DigitalOcean Holdings, Inc. et al,* Docket No. 1:23-cv-08060 (S.D.N.Y. 2023) (the "Securities Class Action"); conference call transcripts and announcements; filings with the United States Securities and Exchange Commission (the "SEC"); press releases disseminated by DigitalOcean, legal filings, and news reports, and securities analysts' reports about the Company.

## **NATURE OF THE ACTION**

1.      This shareholder derivative action is brought on behalf of DigitalOcean against certain officers and members of the Company's Board for breaches of their fiduciary duties during the Relevant Period (February 16, 2023 and August 25, 2023, inclusive) and for violation of the federal securities laws caused by the issuance of materially false and misleading statements issued, or caused to be issued, by the Individual Defendants in the Company's SEC filings and other public statements. The Individual Defendants' wrongdoing has exposed the Company to massive potential liability to the class, as well as the significant defense costs in the Securities Class Action, as set forth below.

2.      DigitalOcean is a software company offering cloud computing

solutions to build, manage, and scale web and mobile applications. The Company's primary customers are small-to-medium sized businesses seeking to expand their digital presence but lacking adequate resources to support localized software development.

3.    During the Relevant Period, the Individual Defendants disseminated materially false and misleading statements, concealing from the public that: (i) DigitalOcean's management lacked the knowledge and experience to assess complicated tax transactions; (ii) Company management failed to implement and maintain adequate accounting policies and controls; and (iii) as a result of the foregoing, the Company's financial statements were materially inaccurate.

4.    DigitalOcean finally disclosed, on August 3, 2023, that it had "identified certain errors within the unaudited condensed consolidated financial statements for the quarter ended March 31, 2023 as included in our Quarterly Report on Form 10-Q for the three months ended March 31, 2023 filed on May 9, 2023" related to DigitalOcean's accounting for income tax expense, resulting in an $18 million overstatement of income tax expense for the quarter. The Company announced that it would restate its first quarter 2023 financial results and that the restatement would "also include disclosure of an identified material weakness and that our disclosure controls and procedures were not effective as of March 31, 2023." The Company further reported that the material weakness had existed since at least

December 31, 2022, requiring DigitalOcean's to restate its financial results for the fiscal year 2022 as well.

5.    On this news, the price of DigitalOcean's stock dropped 24.8% in one day, closing at $35.11 per share on August 4, 2023.

6.    On August 24, 2023, the Company announced that it was replacing Defendant Spruill as CEO. On this news, the price of DigitalOcean's stock declined 8.4% in one day, closing at $28.86 per share on August 25, 2023.

7.    On September 19, 2023, the Securities Class Action was filed against the Company, its Chief Financial Officer ("CFO") and its Chief Executive Officer ("CEO"), exposing the Company to massive class-wide liability.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)).

9.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

11.    In connection with the acts, conduct and other wrongs complained of

herein, the Individual Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

12.    Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. §1391(b)(1), as DigitalOcean is incorporated in this District and a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District.

## PARTIES

### *Plaintiff*

13.    Plaintiff is, and has been at all relevant times, a shareholder of DigitalOcean.

### *Nominal Defendant*

14.    Nominal Defendant DigitalOcean is incorporated under the laws of the State of Delaware.

15.    The Company's principal executive offices are located at 101 6th Avenue, New York, New York 10013.  DigitalOcean's common stock trades on the NYSE under the ticker symbol "DOCN."

### *Individual Defendants*

16.    Defendant Yancey Spruill ("Spruill") has served as CEO and as a

member of the Board since August 2019. According to the Company's public filings, Defendant Spruill received $797,179 in 2022 and $82,536,962 in 2021 in compensation from the Company. As of March 15, 2023, Defendant Spruill beneficially owned 3,315,815 shares of DigitalOcean common stock, worth $115,290,887 and constituting 3.44% of the Company's total outstanding common stock.[1]

17.    Defendant Warren Adelman ("Adelman") serves as Executive Chairman of the Board and has served as a member of the Board since November 2020. According to the Company's public filings, Defendant Adelman received $233,397 in 2022 in compensation from the Company. As of March 15, 2023, Defendant Adelman beneficially owned 64,839 shares of DigitalOcean common stock, worth $2,254,452.

18.    Defendant Amy Butte ("Butte") has served as a member of the Board since April 2018 and serves as Chair of the Audit Committee. According to the Company's public filings, Defendant Butte received $225,478 in 2022 in compensation from the Company. As of March 15, 2023, Defendant Butte beneficially owned 95,833 shares of DigitalOcean common stock, worth $3,332,113.

---

[1] Valuations of the Individual Defendants' holdings of Company stock are based on the $34.77 per share closing price of DigitalOcean's stock on March 15, 2023.

19.    Defendant Chris Merritt ("Merritt") has served as a member of the Board since April 2023.

20.    Defendant Hilary Schneider ("Schneider") has served as a member of the Board since November 2020 and serves as Chair of the Compensation Committee and as a member of the Audit Committee. According to the Company's public filings, Defendant Schneider received $218,707 in 2022 in compensation from the Company. As of March 15, 2023, Defendant Schneider beneficially owned 64,365 shares of DigitalOcean common stock, worth $2,237,971.

21.    Defendant Pratima Arora ("Arora") has served as a member of the Board since February 2021 and serves as a member of the Compensation Committee and the Nominating and Corporate Governance Committee. According to the Company's public filings, Defendant Arora received $213,623 in 2022 in compensation from the Company. As of March 15, 2023, Defendant Arora beneficially owned 34,156 shares of DigitalOcean common stock, worth $1,187,604.

22.    Defendant Pueo Keffer ("Keffer") has served as a member of the Board since June 2015 and serves as Chair of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee. According to the Company's public filings, Defendant Keffer received $208,079 in 2022 in compensation from the Company.

23.     Defendant Warren Jenson ("Jenson") has served as a member of the Board since December 2020 and serves as a member of the Audit Committee and the Compensation Committee. According to the Company's public filings, Defendant Jenson received $221,090 in 2022 in compensation from the Company. As of March 15, 2023, Defendant Jenson beneficially owned 62,374 shares of DigitalOcean common stock, worth $2,168,743.

## FIDUCIARY DUTIES OF THE DIRECTOR DEFENDANTS

24.     Because of their positions as officers and/or directors of DigitalOcean, and their ability to control the business and corporate affairs of the Company, the Individual Defendants owed DigitalOcean and its shareholders fiduciary obligations of good faith, loyalty, trust, and candor and were required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner at all relevant times.

25.     Therefore, the Individual Defendants were required to act in furtherance of the best interests of DigitalOcean and its shareholders.

26.     Each director and officer of the Company owes to DigitalOcean and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

27.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of DigitalOcean, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

28.    Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of trust, loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of DigitalOcean, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

29.    As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, earnings, internal controls, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the

Company's accounting policies and practices and its internal controls over financial reporting and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

30.     To discharge their duties, the officers and directors of DigitalOcean were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of DigitalOcean were required to, among other things:

(a)     Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to DigitalOcean's own Code of Conduct;

(b)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion;

(d)     Remain informed as to how DigitalOcean conducted its operations, and, upon receipt of notice or information of imprudent or unsound

conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(e)    Establish and maintain systematic and accurate records and reports of the business and internal affairs of DigitalOcean and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(f)    Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that DigitalOcean's operations would comply with all applicable laws and DigitalOcean's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(g)    Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(h)    Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above; and

(i)    When put on notice of problems with the Company's business

practices, operations, or internal controls, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

31.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by DigitalOcean.

32.    At all times relevant hereto, the Individual Defendants were the agents of each other and of DigitalOcean and were at all times acting within the course and scope of such agency.

33.    Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

## DIGITALOCEAN'S CODE OF BUSINESS CONDUCT AND ETHICS

34.    DigitalOcean's Code of Business Conduct and Ethics (the "Code of Conduct") begins with a direction to "apply good judgment and the highest personal ethical standards in making business decisions."

35.    The Code of Conduct applies to "every employee, officer and director" of the Company, and violations of the Code of Conduct can lead to "disciplinary action, that, depending on the nature of the violation and the history of the employee, may range from a warning or reprimand to termination of employment and, in appropriate cases, civil legal action or referral for criminal prosecution."

36.    In a section titled "**HONEST AND ETHICAL CONDUCT**," the

Code of Conduct states:

> It is our policy to promote high standards of integrity by conducting our affairs
> in an honest and ethical manner. The Company's integrity and reputation
> depends on the honesty, fairness and integrity brought to the job by each
> person associated with us. Unyielding personal integrity and sound judgment
> is the foundation of corporate integrity.

37.    In a section titled "**LEGAL COMPLIANCE**," the Code of Conduct

states, in pertinent part: "Obeying the law is the foundation of this code. Our success

depends upon each employee operating within legal guidelines and cooperating with

local, national and international authorities."

38.    In a section titled "**FINANCIAL INTEGRITY**," the Code of Conduct

states:

> The integrity of our records and public disclosure depends upon the validity,
> accuracy and completeness of the information supporting the entries to our
> books of account. Therefore, our corporate and business records should be
> completed accurately and honestly. The making of false or misleading entries
> is strictly prohibited. Our records serve as a basis for managing our business
> and are important in meeting our obligations to customers, suppliers,
> creditors, employees and others. We also rely upon our accounting and other
> business and corporate records in preparing publicly filed reports. Securities
> laws require that these reports provide full, fair, accurate, timely and
> understandable disclosure and fairly present our financial condition and
> results of operations. Employees who contribute in any way in preparing or
> verifying these reports should strive to ensure that our financial disclosure is
> complete, accurate and transparent.

## DIGITALOCEAN'S AUDIT COMMITTEE CHARTER

39.    DigitalOcean's Audit Committee Charter states that the purpose of the

Audit Committee is to, *inter alia*, "oversee the Company's accounting and financial reporting processes, systems of internal control, financial statement audits and the integrity of the Company's financial statements[,] . . . review any reports or disclosures required by applicable law and listing requirements of any stock exchange on which the Company's securities are listed[, and] oversee the design, implementation, organization and performance of the Company's internal audit function."

40.    In a section titled "*FINANCIAL REVIEW AND DISCLOSURE*," the Audit Committee Charter tasks the Audit Committee with the following responsibilities:

> 6.    **Audited Financial Statement Review; Quarterly and Annual Reports.** The Committee will review the annual audited financial statements, the quarterly financial statements and the Company's "Management's Discussion and Analysis of Financial Condition and Results of Operations" and "Risk Factors," as appropriate, with management and the Auditors. The Committee will be responsible for recommending to the Board whether the proposed annual audited financial statements should be included in the Company's Annual Report on Form 10-K.

> 7.    **Earnings Announcements.** The Committee will review and discuss with management and the Auditors any proposed earnings press releases and other financial information and guidance regarding the Company's results of operations provided publicly or to ratings agencies.

> 8.    **Proxy Report.** After the Public Effective Date [March 26, 2021], the Committee will oversee the preparation of any report of the Committee required by applicable law or Exchange listing requirements to be included in the Company's annual proxy statement.

41.    In a section titled "***INTERNAL CONTROL AND PROCEDURES***,"
the Audit Committee Charter states that the Audit Committee will be responsible
for:

> **Risk Assessment and Management.** The Committee will review and
> discuss with management and the Auditors the Company's processes
> and policies on risk identification, management and assessment in all
> areas of the Company's business, but the Board shall continue to have
> overall responsibility for evaluating key business risks faced by the
> Company, including but not limited to data privacy, technology,
> information security (including data-security and back-up of
> information systems), competition and regulation. Areas of focus for
> the Committee shall include the Company's policies and other matters
> relating to the Company's investments, cash management and foreign
> exchange management, major financial risk exposures, the adequacy
> and effectiveness of the Company's information security policies and
> practices and the internal controls regarding information security, and
> the steps taken by management to monitor and mitigate or otherwise
> control these exposures and to identify future risks.

42.    Also in the section titled, "***INTERNAL CONTROL AND
PROCEDURES***," the Audit Committee Charter continues, stating:

> **Internal Control over Financial Reporting; Disclosure Controls.**
> The Committee will confer with management and the Auditors
> concerning the scope, design, adequacy and effectiveness of internal
> control over financial reporting, including the adequacy and
> effectiveness of the Company's information and cyber security
> policies, the internal controls regarding information security and any
> significant deficiencies and significant changes in internal controls, and
> the Company's disclosure controls and procedures. The Committee will
> review reports on significant findings and recommendations with
> respect to internal controls over financial reporting, together with
> management responses and any special audit steps adopted in light of
> any material control deficiencies.

## SUBSTANTIVE ALLEGATIONS

*Background*

43.     DigitalOcean is a software company offering cloud computing solutions to build, manage, and scale web and mobile applications. The Company's primary customers are small-to-medium sized businesses seeking to expand their digital presence but lacking adequate resources to support localized software development.

44.     On March 26, 2021, DigitalOcean completed an initial public offering ("IPO"), issuing 16,500,000 shares of common stock at a price of $47 per share.

45.     In its Registration Statement filed on Form S-1 with the SEC on March 23, 2021 in connection with the IPO, DigitalOcean characterized itself as an emerging growth company exempt from the requirement of having its internal controls over financial reporting audited by an independent registered public accounting firm under Section 404 of the Sarbanes-Oxley Act of 2002 ("SOX"). The Company did, however, maintain that it would be "required, pursuant to Section 404 to furnish a report by management on, among other things, the effectiveness of our internal controls over financial reporting for the fiscal year ending December 31, 2022." The Registration Statement continued, stating that DigitalOcean had:

> [R]ecently commenced the costly and challenging process of compiling the system and processing documentation necessary to perform the evaluation needed to comply with Section 404 . . . During the evaluation and testing process of our internal controls, if we identify one or more

material weaknesses in our internal controls over financial reporting, we will be unable to certify that our internal controls over financial reporting is effective. A material weakness is a deficiency, or combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

46.    The Registration Statement further disclosed that management had been put on notice of material deficiencies in the Company's internal controls over financial reporting:

> In the course of preparing our audited consolidated financial statements for the year ended December 31, 2019, we identified a material weakness in our internal controls over financial reporting related to secondary sales transactions by current and former employees. Specifically, we did not design and maintain effective controls to evaluate and assess secondary sales transactions in our common stock to determine, in a timely manner, whether additional compensation expense was incurred based on the nature of the transaction. We have remediated this material weakness, which we believe has addressed the underlying cause of this issue. We have implemented measures designed to improve our internal controls over financial reporting, including monitoring and review procedures related to secondary sales transactions to ensure accounting personnel are timely informed of the transactions and can evaluate and record any additional compensation expense deemed necessary.

> We cannot assure you that the measures we have taken to date, and actions we may take in the future, will prevent or avoid potential future material weaknesses in our internal controls over financial reporting in the future. Any failure to maintain internal controls over financial reporting could severely inhibit our ability to accurately report our financial condition or results of operations.

47.    The Relevant Period begins on February 16, 2023, when DigitalOcean issued a press release announcing the Company's financial results for the fiscal year

ended December 31, 2022 and revealing a net loss attributable to common stockholders of $24.3 million (the "February 16, 2023 Press Release").[2] The February 16, 2023 Press Release was included in the Company's Current Report on Form 8-K filed with the SEC the same day (the "February 16, 2023 Form 8-K").

48.    On February 23, 2023, DigitalOcean filed its Annual Report on Form 10-K with the SEC (the "2022 Form 10-K"). The 2022 Form 10-K included the financial results that were contained in the February 16, 2023 Press Release. The 2022 Form 10-K further reported that Company management "evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2022" and based upon that evaluation, "our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, ***our disclosure controls and procedures were effective*** at the reasonable assurance level."[3]

49.    On May 9, 2023, DigitalOcean filed a Quarterly Report on Form 10-Q with the SEC revealing the Company's financial results for the first quarter of 2023 (the "Q1 2023 Form 10-Q") and maintained that DigitalOcean's "Chief Executive Officer and Chief Financial Officer concluded that, as of such date, ***our disclosure controls and procedures were effective*** at the reasonable assurance level."

***The Truth Emerges***

---

[2] Net loss attributable to common stockholders is a measure of the Company's losses after subtracting dividends paid to preferred shareholders.
[3] Unless indicated otherwise, all emphasis in this Complaint is added.

50.    On August 3, 2023, DigitalOcean filed a current report on Form 8-K with the SEC, announcing the Company's financial results for the second quarter of 2023, ended June 30, 2023 (the "August 3, 2023 Form 8-K"). In a press release included in the August 3, 2023 Form 8-K, the Company explained that it had:

> [I]dentified certain errors within the unaudited condensed consolidated financial statements for the quarter ended March 31, 2023 as included in our Quarterly Report on Form 10-Q for the three months ended March 31, 2023 filed on May 9, 2023. Specifically, there were errors in our accounting for income tax expense primarily relating to the calculation of certain capitalized research or experimental expenditures under Section 174 of the Internal Revenue Code of 1986 which impacted our income tax provision ("Section 174 Error"). Primarily as a result of the Section 174 Error, accrued taxes as of March 31, 2023 were overstated and the income tax expense for the three months ended March 31, 2023 was overstated by approximately $18 million. Additionally, the Company is correcting other immaterial errors.

51.    The August 3, 2023 Form 8-K further announced that the Company would be amending its Q1 2023 Form 10-Q, which would "include disclosure of an identified material weakness and that our disclosure controls and procedures were not effective as of March 31, 2023." The August 3, 2023 Form 8-K revealed that the "material weakness also existed as of December 31, 2022" and that DigitalOcean would therefore file "an amendment to our Annual Report on Form 10-K for the year ended December 31, 2022" as Ernst & Young, LLP ("EY"), DigitalOcean's accountant, had "determined that its report on internal control over financial reporting as of December 31, 2022 will be revised to an adverse opinion that internal control over financial reporting was ineffective and will be reissued." DigitalOcean

explained: "[W]e are still finalizing the impact of these errors on our financials."

52.    The August 3, 2023 Form 8-K further revealed that the Company was lowering its total revenue guidance for 2023 from a range of $700 to $720 million to a range of $680 to $685 million.

53.    On this news, the price of DigitalOcean's stock declined 24.8% in one day, closing at $35.11 per share on August 4, 2023.

54.    On August 9, 2023, DigitalOcean filed a Form 12b-25 Notification of Late Filing with the SEC, indicating that the Company would be "unable to file its Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2023 . . . within the prescribed time period, without unreasonable effort or expense, due to the circumstances previously disclosed" in the August 3, 2023 Form 8-K. The Company further revealed:

> As a result of the errors described above and the related restatement, the Company has identified a material weakness in its internal control over financial reporting ('**ICFR**'). The Company's management concluded that the Company's disclosure controls and procedures ('**DCP**') and ICFR were not effective as of December 31, 2022 and the Company's DCP were not effective as of March 31, 2023 because of this material weakness.

(emphasis in original).

55.    Also on August 9, 2023, during an earnings call, DigitalOcean CFO W. Matthew Steinfort explained:

> I'd like to provide some context on the material weakness and the tax expense error described in the 8-K we filed earlier today. Over the past

several months, we have made meaningful upgrades to our tax capabilities and expertise. With new tax leadership recently in place and with the support of incremental third- party tax advisers, we identified an error in our tax expense calculation related to the treatment of R&D expense in the context of Section 174.

The error had an immaterial impact on our full year 2022 financials but did have a material impact on our reported Q1 2023 financials and rose to the level of a material weakness in both periods. The correction of the roughly $18 million overstatement of Q1 tax expense will result in lower net loss and higher non-GAAP earnings per share in Q1 of 2023 and will result in a lower net operating loss balance as of December 31, 2022.

56.    On August 11, 2023, the Company filed an amendment to the 2022 Form 10-K (the "2022 Form 10-K/A") which revealed that DigitalOcean: "Identified errors primarily related to the Company's accounting for income tax expense, of which $3.5 million results in the understatement of its reported loss for the year ended December 31, 2022." Accordingly, the Company revised its net loss attributable to common stockholders from $24.3 million to $27.8 million.

57.    The 2022 Form 10-K/A described the Company's deficiency with respect to internal controls:

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2022. Based on that evaluation, at the time the Annual Report on Form 10-K was filed on February 22, 2023, our Chief Executive Officer and our Chief Financial Officer, concluded that, as of December 31, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.
Subsequent to that evaluation, our Chief Executive Officer and our Chief Financial Officer concluded that, as of December 31, 2022, our

disclosure controls and procedures were not effective at the reasonable assurance level due to the material weakness in our internal control over financial reporting described below.

* * *

We did not design and maintain effective controls over the accounting for income taxes. ***Specifically, we did not have the appropriate skills and level of experience to assess complicated tax matters.*** Additionally, we did not properly identify, risk assess, design and maintain effective controls related to the income tax provision, including controls related to the evaluation of tax deductions and the impact on our tax provision. This material weakness resulted in immaterial errors to the income tax expense, deferred taxes, accrued tax liabilities and income tax disclosures in the 2022 consolidated financial statements. This material weakness could result in a misstatement of the aforementioned account balances or disclosures that would result in a material misstatement to the annual or interim financial statements that would not be prevented or detected.

***Management subsequently concluded that the material weaknesses described above existed as of December 31, 2022.*** As a result, we have concluded that we did not maintain effective internal control over financial reporting as of December 31, 2022, based on the criteria in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. Accordingly, management has revised its report on internal control over financial reporting.

58.    The 2022 Form 10-K/A contained a "Remediation Plan with Respect to Material Weakness," which included hiring a VAP of Tax in March 2023, hiring additional tax personnel "***with the appropriate knowledge, training and experience . . . to design and maintain appropriate accounting policies, procedures and controls***," consulting a third-party tax advisor, and taking action to "design and implement controls to address the identification, accounting, reporting and review

22

of complex tax transactions."

59.    The 2022 Form 10-K/A further included an EY report which stated that

DigitalOcean:

> [H]as not maintained effective internal control over financial reporting
> as of December 31, 2022 . . . The following material weakness has been
> identified and included in management's assessment. Management did
> not design and maintain effective controls over the accounting for
> income taxes. Specifically, management did not have the appropriate
> skills and level of experience to assess complicated tax matters.
> Additionally, management did not properly identify, risk assess, design
> and maintain effective controls related to the income tax provision,
> including controls related to the evaluation of tax deductions and the
> impact on the tax provision.

60.    Also on August 11, 2023, the Company filed an amendment to a

quarterly report it had filed on May 9, 2023 (the "1Q 2023 Form 10-Q" and "1Q

2023 Form 10-Q/A"), which stated:

> As previously disclosed in the Company's Current Report on Form 8-
> K, filed on August 3, 2023, management determined that the
> Company's previously issued unaudited condensed consolidated
> financial statements for the three months ended March 31, 2023, as
> included in the Company's Quarterly Report on Form 10-Q for the three
> months ended March 31, 2023 filed with the SEC on May 9, 2023 (the
> "First Quarter 2023 10-Q"), should no longer be relied upon due to the
> discovery, in the course of preparing the Company's interim financial
> statements for the fiscal quarter ended June 30, 2023, of errors in the
> Company's accounting for income tax expense primarily relating to the
> calculation of certain capitalized research or experimental expenditures
> under Section 174 of the Internal Revenue Code of 1986, which
> impacted the Company's income tax provision ("Section 174 Error")
> resulting in adjustments to other current liabilities, deferred tax assets
> and tax expense (benefit). Additionally, in connection with the
> restatement, the Company is correcting other immaterial errors.

As a result of the Section 174 Error, accrued taxes as of March 31, 2023 were overstated and the income tax expense for the three months ended March 31, 2023 was overstated by approximately $15 million. Additionally, the Company is correcting other immaterial errors, which includes the following: an income tax error related to transfer pricing reduced tax expense by approximately $4 million; and other immaterial errors that impacted operating lease right-of-use assets, net, operating lease liabilities, current, operating lease liabilities, non- current and sales and marketing expenses. The Company concluded these errors relating to the three months ended March 31, 2023 and other previously identified immaterial errors relating to the year ended December 31, 2022, which were originally recorded as out-of-period adjustments in the three months ended March 31, 2023, in aggregate, were material to the condensed consolidated financial statements. Therefore, the Company has corrected the errors and restated the previously issued unaudited condensed consolidated financial statements for the three months ended March 31, 2023

61.    On August 24, 2023, DigitalOcean announced in a Current Report on Form 8-K that it would searching for a new CEO to replace Defendant Spruill. That filing stated that Defendant Spruill would "continue to serve as Chief Executive Officer until a successor has been appointed, at which point he will step down from his role and as a member of the Board."

62.    On this news, the price of DigitalOcean's stock declined 8.4% in one day, closing at $28.86 per share on August 25, 2023.

**The Individual Defendants' False and Misleading Statements**

63.    DigitalOcean announced its financial results for fiscal year 2022 in its February 16, 2023 Press Release. The Company provided condensed consolidated financial statements for fiscal year 2021 in the February 16, 2023 8-K, which

included a net loss attributable to common stockholders of $24.3 million. The Company's 2022 Form 10-K, signed by Defendants Spruill, Adelman, Arora, Butte, Jenson, Keffer, Levine, and Schneider, included the same financial information that was contained in the February 16, 2023 Form 8-K.

64.    The 2022 Form 10-K further stated that Company management had established and evaluated DigitalOcean's internal controls over financial reporting and found them to be effective:

> Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2022. ***Based on the evaluation of our disclosure controls and procedures as of December 31, 2022, our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective at the reasonable assurance level.***

> \* \* \*

> Our management is responsible for establishing and maintaining adequate "internal control over financial reporting," as defined in Rule 13a-15(f) and Rule 15d-15(f) under the Exchange Act. Our management conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2022 based on the criteria established in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission.

> ***Based on the results of its evaluation, management concluded that our internal control over financial reporting was effective as of December 31, 2022***. Our independent registered public accounting firm, Ernst & Young LLP, has issued an auditors' report on the effectiveness of our internal control over financial reporting, which is included in Item 8 of this Annual Report on Form 10-K.

(emphasis added)

65.     Attached to the 2022 Form 10-K were certifications pursuant to the

Sarbanes-Oxley Act of 2002, signed by Defendant Spruill, stating:

> 3.Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

> 4.The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–15(e) and 15d–15(e)) for the registrant and have:

> > a.Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

> > * * *

> > c.Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> > d.Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

> 5.The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the

registrant's board of directors (or persons performing the equivalent functions):

> a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

> b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

66.    On April 20, 2023, DigitalOcean filed its 2023 proxy statement with the SEC ("2023 Proxy Statement") which included a report signed by the Audit Committee Members, Defendants, Butte, Adelman, and Jenson, stating:

> ***The Audit Committee has reviewed and discussed the audited financial statements for the fiscal year ended December 31, 2022 with management of the Company.*** The Audit Committee has discussed with the independent registered public accounting firm the matters required to be discussed by Auditing Standard No. 1301, Communications with Audit Committees, as adopted by the Public Company Accounting Oversight Board ("PCAOB") and the applicable requirements of the SEC. The Audit Committee has also received the written disclosures and the letter from the independent registered public accounting firm required by applicable requirements of the PCAOB regarding the independent accountants' communications with the Audit Committee concerning independence, and has discussed with the independent registered public accounting firm the accounting firm's independence. ***Based on the foregoing, the Audit Committee has recommended to the Board of Directors that the audited financial statements be included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2022.***

67.    The Company's 1Q 2023 Form 10-Q, filed on May 9, 2023, maintained that the Individual Defendants had evaluated the Company's internal controls and

found them to be effective:

> We maintain "disclosure controls and procedures," as defined in Rule 13a- 15(e) and Rule 15d-15(e) under the Exchange Act that are designed to ensure that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms.

* * *

> Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of March 31, 2023. Based on the evaluation of our disclosure controls and procedures as of March 31, 2023, *our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective at the reasonable assurance level*.

68.    The 1Q 2023 Form 10-Q included SOX certifications signed by Defendant Spruill with substantially the same statements identified in ¶65.

69.    The foregoing statements were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Individual Defendants lacked the skills and expertise to assess complex tax transactions; (ii) the Individual Defendants failed to design and maintain adequate accounting policies and controls; and as a result (iii) the Company's financial statements were materially inaccurate.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

70.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and

proximate result of the Individual Defendants' breaches of fiduciary duties and other violations of law.

71.    DigitalOcean is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

72.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

73.    Plaintiff is an owner of DigitalOcean stock and has been a continuous holders of the Company's common shares at all relevant times.

74.    At the time this action was commenced, the eight-member Board was comprised of Defendants Spruill, Adelman, Butte, Merritt, Schneider, Arora, Keffer, and Jenson. Accordingly, Plaintiff is only required to show that four Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

75.    The Individual Defendants, together and individually, violated and

breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Individual Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Individual Defendants could not fairly and fully prosecute such a suit even if they instituted it.

76.    The Individual Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Individual Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Individual Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

77.    As members of the Board charged with overseeing the Company's affairs, each of the Individual Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of DigitalOcean, the Individual Defendants knew, or should have known, the

material facts surrounding DigitalOcean's internal controls over financial reporting.

78.    Defendant Spruill is not disinterested or independent, and therefore, is incapable of considering a demand because he is named as a defendant, and faces significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

79.    Defendants Butte, Schneider, and Jenson serve as members of the Audit Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the Company's internal controls as alleged above. Therefore, Defendants Butte, Schneider, and Jenson cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

80.    Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their

control of the Company. Indeed, all of the Individual Defendants benefitted directly from the wrongdoing alleged herein. Specifically, the Director Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of DigitalOcean stock and stock options they held.

81.    The Individual Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Individual Defendants to also adhere to DigitalOcean's standards of business conduct. The Individual Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Individual Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

82.    Furthermore, demand in this case is excused because each of the directors derive substantial revenue from the Company, control the company, and are indebted to each other. These conflicts of interest have precluded the current directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct.

83.    Significantly, none of the Individual Defendants have taken remedial

action to redress the conduct alleged herein. For instance, none of the Individual

Defendants have sought to enforce DigitalOcean's Clawback Policy, which

provides, in relevant part:

> As a public company, if we are required to restate our financial results
> due to our material noncompliance with any financial reporting
> requirements under the federal securities laws as a result of misconduct,
> our Chief Executive Officer and Chief Financial Officer may be legally
> required to reimburse the Company for any bonus or other incentive-
> based or equity-based compensation they receive in accordance with
> the provisions of Section 304 of the Sarbanes-Oxley Act of 2002.

84.     The Individual Defendants' conduct described herein and summarized

above could not have been the product of legitimate business judgment as it was

based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of

the directors can claim exculpation from their violations of duty pursuant to the

Company's charter. As a majority of the directors face a substantial likelihood of

liability, they are self-interested in the transactions challenged herein. They cannot

be presumed to be capable of exercising independent and disinterested judgment

about whether to pursue this action on behalf of the shareholders of the Company.

Accordingly, demand is excused as being futile.

85.     The acts complained of herein constitute violations of fiduciary duties

owed by DigitalOcean's officers directors, and these acts are incapable of

ratification.

86.     The Individual Defendants may also be protected against personal

liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of DigitalOcean. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain officers of DigitalOcean, there would be no directors' and officers' insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Individual Defendants is futile and, therefore, excused.

87.    If there is no directors' and officers' liability insurance, then the Individual Defendants will not cause DigitalOcean to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

88.    Accordingly, for all of the reasons set forth above, all of the current directors cannot consider a demand with disinterestedness and independence.

Consequently, a pre-suit demand on the Board is futile and excused.

## COUNT I
### Against the Individual Defendants for
### Breach of Fiduciary Duties

89.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

91.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

92.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's

corporate interests.

93.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

94.    Plaintiff, on behalf of DigitalOcean, has no adequate remedy at law.

<u>**COUNT II**</u>
**Against the Individual Defendants for**
**Unjust Enrichment**

95.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of DigitalOcean.

97.    The Individual Defendants were unjustly enriched by their receipt of bonuses, stock options, or similar compensation from DigitalOcean that was tied to their performance or to the artificially inflated valuation of DigitalOcean.

98.    The Insider Trading Defendants were further unjustly enriched with

respect to insider sales of Company stock.

99.    Plaintiff, as a stockholder and representative of the Company, seeks restitution from the Individual Defendants, and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants as a result of their wrongful conduct and fiduciary breaches.

100.   As a direct and proximate result of the Individual Defendants' misconduct, the Company has suffered significant damages, as alleged herein.

101.   Plaintiff, on behalf of DigitalOcean, has no adequate remedy at law.

## COUNT III
### Against the Individual Defendants for Violations of § 10(b) of the Exchange Act and Rule 10b-5

102.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.   The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

104.   The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

105.   The Individual Defendants violated Section 10(b), of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff.

106.   The Individual Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of DigitalOcean were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

107.   The Individual Defendants, by virtue of their receipt of information reflecting the true facts of DigitalOcean, their control over, and/or receipt and/or modification of the materially misleading statements alleged herein, and/or their associations with the Company which made them privy to confidential proprietary information concerning DigitalOcean, participated in the fraudulent scheme alleged herein.

108.   As a result of the foregoing, the market price of DigitalOcean common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of DigitalOcean common stock in purchasing DigitalOcean common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

109.   In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Action.

110.   By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

111.   Plaintiff on behalf of DigitalOcean has no adequate remedy at law.

## COUNT IV
**Against the Individual Defendants for Waste of Corporate Assets**

112.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

113.   The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of DigitalOcean's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

114.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, among other things, incurring and paying defense costs in connection with the Securities Action, and approving performance-based compensation linked to the Company's perceived successes.

115.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

116.   Plaintiff on behalf DigitalOcean has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and

transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.  Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.  Awarding punitive damages;

D.  Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.  Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: December 14, 2023    **RIGRODSKY LAW, P.A.**

By: */s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Attorneys for Plaintiff*